UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case Number: 4:13-CR-182-SDJ-CAN |
| | § | |
| DEBORAH ANN DODD (2) | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Deborah Ann Dodd's Emergency Motion for
Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #145). Raising
health concerns related to COVID-19, the respiratory disease caused by the novel
coronavirus SARS-CoV-2, Dodd requests that her remaining sentence be reduced to
time served or, alternatively, that she may complete the remainder of her sentence
on home confinement. The Government has responded in opposition, (Dkt. #148), to
which Dodd replied, (Dkt. #149).[1] The Court, having considered the motion and
response, the record, and the applicable law, finds that the motion must be
**DISMISSED for lack of jurisdiction**.

### I. BACKGROUND

Dodd pleaded guilty to conspiracy to possess with intent to distribute 500
grams or more of a mixture containing a detectable amount of methamphetamine or
50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. § 846 and
21 U.S.C. § 841(b)(1)(A). She was sentenced to a 140-month term of imprisonment
and has been in custody since 2015. (Dkt. #120).

---

[1] Dodd also filed a Notice of Supplemental Authority. (Dkt. #156).

Dodd has requested that, because of risks to her health associated with the COVID-19 pandemic, she be released from the Bureau of Prisons' ("BOP") FCI Pekin facility, where she is currently serving her sentence. Relying on 18 U.S.C. § 3582(c)(1)(A), Dodd specifically requests that she be "resentenced" to time served or, alternatively, that the Court order that she complete the remainder of her sentence on home confinement.

Dodd filed an electronic mail request for compassionate release with her warden on March 24, 2020, stating that her health conditions place her at heightened risk of grave illness if she is infected with COVID-19. (Dkt. #149-1, Ex. A). Dodd advised the warden that she suffers from a number of chronic illnesses, including chronic obstructive pulmonary disease, asthma, and high blood pressure. She further noted that she is a breast cancer survivor. The warden responded that Dodd needed to provide the request "in writing" and provide further information. Dodd later submitted a renewed request for compassionate release on April 7, 2020, which was denied. Dodd filed her compassionate-release motion in this Court on April 24, 2020. (Dkt. #145).

The Government opposes Dodd's motion, arguing that it is not properly before the Court because Dodd failed to exhaust her administrative remedies, and in any event, the COVID-19 pandemic is not an extraordinary and compelling reason justifying a reduction in Dodd's sentence. (Dkt. #148).

## II. DISCUSSION

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance, invoked by Dodd, arises from 18 U.S.C. § 3582(c)(1)(A)(i), which authorizes a district court to reduce a term of imprisonment when "extraordinary and compelling reasons" for a reduction exist that are "consistent with applicable policy statements issued by the Sentencing Commission," and other procedural and substantive requirements are met. 18 U.S.C. § 3582(c)(1)(A).

Although Dodd has met section 3582(c)(1)(A)'s exhaustion requirement, she has not met the statute's requirement that "extraordinary and compelling reasons" exist "consistent with applicable policy statements issued by the Sentencing Commission," warranting a reduction of her sentence. Dodd's motion, therefore, must be dismissed for lack of jurisdiction.

## A. Dodd Has Met Section 3582(c)(1)(A)'s Exhaustion Requirement.

Dodd's compassionate-release motion may be considered only if she first meets section 3582(c)(1)(A)'s exhaustion requirement. The statute provides that a court may not consider any modification to a defendant's sentence under section 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). The Director of the BOP may request a sentence reduction

in court at any time. *Id.* A defendant may also make such a request, but only after fully exhausting remedies within the BOP or after thirty days have passed since he or she sought administrative remedies. *Id.*[2]

Dodd has met section 3582(c)(1)(A)'s exhaustion requirement. Under 28 C.F.R. § 571.61, a prisoner's section 3582(c)(1)(A) request for compassionate release must be submitted to the warden of his or her facility. The regulation provides that the request, which must "ordinarily" be in writing, should advise the warden of the extraordinary or compelling circumstances that the inmate believes warrant consideration, as well as the inmate's proposed release plan, including where the inmate will reside and the inmate's plans for any potential medical treatment. 28 C.F.R. § 571.61. Dodd submitted her request electronically to the warden of her facility on March 24, 2020. The request described Dodd's health conditions and asserted that, given her infirmities and chronic illnesses, she is particularly at risk of dire consequences if she is infected with COVID-19. Based on these assertions, Dodd requested compassionate release. (Dkt. #149-1, Ex. A). Dodd also described her release plan, stating that she would live with her parents, who would pay any medical expenses Dodd might incur and ensure that Dodd has transportation to medical facilities for treatment. *Id.*

Although the warden requested that Dodd resubmit her request "in writing," neither the warden, nor the Government in its briefing to this Court, has provided

---

[2] In 2018, Congress passed the First Step Act, Pub. L. 115-391, 132 Stat. 5194, which, among other things, amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant, in addition to the Director of the BOP, to move for a sentence reduction.

any explanation or argument as to why Dodd's March 24 request was insufficient under the governing regulation. The Court concludes that Dodd has met section 3582(c)(1)(A)'s exhaustion requirement because her March 24, 2020 communication to her warden was sufficient under 28 C.F.R. § 571.61, and her motion was filed with this Court on April 24, 2020, after thirty days had elapsed since her request for administrative remedies.

## B. Dodd Has Not Met Section 3582(c)(1)(A)'s Requirements for Sentence Modification.

### 1. Dodd must meet section 3582(c)(1)(A)'s requirement that "extraordinary and compelling reasons" exist "consistent with applicable policy statements issued by the Sentencing Commission," warranting a reduction of her sentence.

Under section 3582(c)(1)(A)(i), a district court may grant a sentence reduction if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Congress did not define what constitute "extraordinary and compelling" reasons for a sentence reduction under section 3582(c)(1)(A), but rather delegated that authority to the Sentencing Commission. In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set

forth in [18 U.S.C. § 3553(a)(2)]." And, as particularly relevant here, in 28 U.S.C. § 994(t) "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction [under section 3582(c)(1)(A)], including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

The Commission's policy statements, issued under 28 U.S.C. § 994(t), are binding concerning what should be considered extraordinary and compelling reasons for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). As the Fifth Circuit has explained, "a common sense reading" of section 3582(c)(1)(A)'s phrase that a sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission," is that, "regardless of whether Congress wanted [the Commission's] policy statements to be binding in the sentencing context, it wished them to be binding in § 3582(c) proceedings." *Id.* at 435. "If a sentence reduction is inconsistent with a policy statement, it would violate § 3582(c)'s directive, so policy statements must be binding." *Id.*; *see also Dillon*, 560 U.S. at 827 (explaining that where 18 U.S.C. § 3582(c)(2)—using the same language as section 3582(c)(1)(A)—permits a sentencing reduction based on a retroactive guidelines amendment only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on courts).

Thus, Dodd cannot obtain a sentence reduction under section 3582(c)(1)(A) merely by asserting reasons that she, or for that matter this Court, might believe are

sufficiently "extraordinary and compelling" to justify a sentence reduction. Instead, under the plain text of 18 U.S.C. § 3582(c)(1)(A) and 28 U.S.C. § 994(t), as well as controlling precedent, Dodd's proffered reasons must be consistent with the Sentencing Commission's applicable policy statement concerning what should be considered extraordinary and compelling reasons for a sentence reduction under section 3582(c)(1)(A).

> **2. Dodd fails to satisfy section 3582(c)(1)(A) because her alleged "extraordinary and compelling reasons" for sentence reduction are not "consistent with applicable policy statements issued by the Sentencing Commission."**

Dodd's compassionate-release motion turns on her assertion that the risks to her health associated with COVID-19, coupled with her existing infirmities, constitute extraordinary and compelling reasons to reduce her sentence. Dodd's assertions fail because they are untethered to the Sentencing Commission's binding applicable policy statement in section 1B1.13 of the Sentencing Guidelines. Section 1B1.13 describes what will be considered "extraordinary and compelling reasons" for sentence reduction under section 3582(c)(1)(A)(i) and provides no basis for a reduction based on COVID-19.

Section 1B1.13 allows a sentence reduction for "extraordinary and compelling reasons" only if the reasons are "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3).[3] Application note 1 to the policy statement explains that

---

[3] The policy statement is binding under the express terms of section 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *See Dillon*, 560 U.S. at 824–28 (rejecting the proposed application of *Booker* in the related context

"extraordinary and compelling reasons exist under any of the circumstances set forth below," which include only: (a) a defendant suffering from a terminal illness or other medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (b) a defendant at least 65 years old who "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less"; (c) a defendant who has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver; or (d) "[a]s determined by the Director of the Bureau of Prisons, . . . an extraordinary and compelling reason other than, or in combination with, the [above] reasons." *Id.*, comment. (n.1(A)–(D)).

Consistent with the application note, the BOP has issued Program Statement 5050.50 ("PS 5050.50"), which describes the BOP's consideration of compassionate-release requests. PS 5050.50, which was amended effective January 17, 2019, following the passage of the First Step Act, sets forth in detail the BOP's definition of circumstances that may support a request for compassionate release, limited to the same bases identified by the Commission: serious medical conditions, advanced age, and family circumstances.[4] *See* PS 5050.50 ¶¶ 3–6.

---

of a proceeding under section 3582(c)(2)); *United States v. Doublin*, 572 F.3d 235, 237–39 (5th Cir. 2009) (rejecting application of *Booker* to sentence reductions under 18 U.S.C. § 3582).

[4] PS 5050.50 also requires consideration of a list of nonexclusive factors: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and

As the Government correctly notes in its response brief, neither the Commission's policy statement nor PS 5050.50 provide a basis for compassionate release based on Dodd's COVID-19 concerns. Instead, the grounds for release are limited to individual circumstances involving health, age, family responsibilities, and other reasons as determined by the Director of the BOP. For this reason, courts have concluded that an inmate's concerns about risks associated with the spread of COVID-19 are not consistent with the policy statement of the Commission as required by section 3582(c)(1)(A). *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (explaining that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); *United States v. Eberhart*, No. 13-CR-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement."); *United States v. Zywotko*, No. 2:19-CR-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (same); *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) (concluding that the defendant "failed to present evidence of extraordinary and compelling reasons to modify his prison sentence" because he "did not meet any of the criteria set forth" by the Commission and "cite[d] no authority for

---

sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 ¶ 7).

the proposition that the *fear* of contracting a communicable disease warrants a sentence modification" (emphasis in original)).

Because Dodd's compassionate-release motion seeks a sentence reduction based on alleged "extraordinary and compelling reasons" that are not "consistent with applicable policy statements issued by the Sentencing Commission," she fails to meet the requirements of section 3582(c)(1)(A)(i).[5]

### 3. The First Step Act did not alter the substantive criteria for compassionate release under section 3582(c)(1)(A).

Recognizing that the "extraordinary and compelling reasons" she offers in support of a sentence reduction cannot be reconciled with the applicable text of section 1B1.13 of the Guidelines, Dodd argues that courts are no longer bound by section 1B1.13. In Dodd's view, following the First Step Act, the Court now has authority under section 1B1.13, application note 1(D), to determine for itself what constitute "extraordinary and compelling" reasons to modify her sentence. Dodd is mistaken.

Section 1B1.13's application note 1(D) requires the Director of the BOP to determine whether an inmate has adequately demonstrated extraordinary and compelling reasons for sentence modification other than, or in combination with, the reasons described in subsections (A) through (C) of application note 1, *i.e.*, a medical condition, age, and/or family circumstances. Dodd maintains, however, that application note 1(D)'s reference to the Director of the BOP conflicts with the recently

---

[5] Given Dodd's failure to meet section 3582(c)(1)(A)'s requirements, the Court need not address whether the applicable 18 U.S.C. § 3553(a) factors support a sentence reduction.

amended section 3582(c)(1)(A), such that now the Sentencing Guidelines should be read to grant the same authority to district courts. Dodd's argument fails to recognize the difference between the First Step Act's amendments related to the procedural requirements for seeking compassionate release in district court and the unamended substantive requirements that permit courts to grant compassionate release.

The First Step Act amended section 3582(c)(1)(A) to permit a defendant to move the district court directly for compassionate release, overriding those parts of section 1B1.13 of the Sentencing Guidelines providing that only the Director of BOP may file such motions. *See supra* n.2. The First Step Act amendments to section 3582(c)(1)(A), however, did not change the substantive criteria that district courts must apply in making those decisions. The amendments also did not shift the authority to develop such criteria from the Sentencing Commission to the courts. To the contrary, the First Step Act left unchanged two critical statutory commands vesting the Commission, not courts, with authority to set the applicable standard for "extraordinary and compelling reasons" warranting a sentence reduction: (1) any sentence reduction under section 3582(c)(1)(A) must still be "consistent with applicable policy statements issued by the Sentencing Commission"; and (2) under 28 U.S.C. § 994(t), "[t]he [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, *shall describe what should be considered extraordinary and compelling*

*reasons for sentence reduction*, including the criteria to be applied and a list of specific examples," *Id.* (emphasis added).[6]

Overreading the First Step Act's procedural revision concerning *who* may file a compassionate-release motion, Dodd contends that the Act, without saying so, also effectuated a significant change to the *substantive criteria* supporting compassionate release. But "there is no comparable inherent incompatibility between a statute allowing defendants to move for compassionate release and a policy statement allowing BOP a role in determining whether compassionate release is warranted, and thus no basis for deeming the policy statement [in section 1B1.13] overridden." *United States v. Lynn*, No. 89-72, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019). The fact that Congress's change to section 3582's procedural mechanism necessarily overrides a Sentencing Commission policy statement concerning the same procedural mechanism cannot be translated into congressional intent to alter the statute's provisions governing the merits of compassionate-release motions.[7]

In this regard, when Congress passed the First Step Act, modifying section 3582(c)(1)(A), it could have altered the statute's requirement that any sentence

---

[6] The First Step Act also did not disturb Congress's related directive that the Sentencing Commission adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C).

[7] Recent circuit precedent confirms that courts must still apply section 1B1.13's substantive criteria to compassionate-release motions. *See United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (discussing the First Step Act's procedural changes to section 3582(c)(1)(A) and affirming the district court's denial of compassionate release, which applied section 1B1.13's policy statement describing when extraordinary and compelling reasons exist for sentence modification).

reduction must be consistent with the Commission's applicable policy statements. It did not.[8] Congress also could have amended the provisions in 28 U.S.C. § 994 expressly vesting the Sentence Commission with authority to issue policy statements regarding "the appropriate use" of section 3582(c)'s sentence modification provisions, 28 U.S.C. § 994(a)(2)(C), and to promulgate policy statements describing what should be considered extraordinary and compelling reasons for sentence reduction under section 3582(c)(1)(A), *id*. § 944(t). Again, it did not. These provisions remain in effect, and Congress's decision to leave them in place cannot be ignored or elided by this Court. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, — U.S. —, 140 S.Ct. 1009, 1018, 206 L.Ed.2d 356 (2020) ("And where, as here, Congress has simultaneously chosen to amend one statute in one way and a second statute in another way, we normally assume the differences in language imply differences in meaning."). Likewise, this Court remains bound by circuit precedent confirming that the Sentencing Commission's policy statements are binding in section 3582(c) proceedings. *See Garcia*, 655 F.3d at 435 ("If a sentence reduction is inconsistent with

---

[8] Congress also did not direct the Commission to amend the Guidelines based on the First Step Act. Notably, Congress took a different approach in the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). There, Congress specifically mandated that the Commission promulgate "as soon as practicable" (and not later than 90 days after August 3, 2010) "such conforming amendments" to the Sentencing Guidelines "as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." *Id*. § 8, 124 Stat. 2374. Unlike the Fair Sentencing Act, Congress did not mandate such action with the First Step Act. Instead it legislated with explicit reference to and knowledge of, *inter alia*, the existing policy statement in 1B1.13 concerning "extraordinary and compelling reasons" for sentence modification. *See RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 386 (6th Cir. 2014) ("But nor will we invalidate a regulation over a disagreement with an agency's policy which Congress has had time and opportunity to reverse.").

a policy statement, it would violate § 3582(c)'s directive, so policy statements must be binding.").

Further, in the only on-point appellate decision to date, the Tenth Circuit followed this approach. In *United States v. Saldana*, the defendant argued that there were "extraordinary and compelling reasons" warranting a reduction of his sentence because he would no longer be a career offender under the Sentencing Guidelines based on changes in applicable case law. 807 F. App'x 816, 818 (10th Cir. 2020). The Tenth Circuit rejected that argument when it affirmed the district court's dismissal of the defendant's compassionate-release motion for lack of jurisdiction. Referencing section 1B1.13 and PS 5050.50, the *Saldana* court explained that "neither the § 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling' reason warranting a sentence reduction." *Id*. at 820. Notably, the Tenth Circuit did not conclude that, following the First Step Act, the district court was free to reach its own conclusions as to whether changes in applicable case law constituted an "extraordinary and compelling" reason for a sentence reduction, and that such reason need not be consistent with applicable policy statements of the Commission.

The *Saldana* decision is consistent with the Supreme Court's reasoning in *Dillon*. Although *Dillon* was decided prior to the First Step Act, its guidance remains applicable in cases applying section 3582. There, the Court made clear that, in section 3582(c) proceedings, applicable policy statements issued by the Sentencing Commission are binding. *Dillon*, 560 U.S. at 830. *Dillon* concerned a motion filed

under 18 U.S.C. § 3582(c)(2), which allows a sentence reduction in limited circumstances upon the Commission's adoption of a retroactive amendment to the Sentencing Guidelines lowering a Guideline range. Section 3582(c)(2) allows for a sentence reduction following such a retroactive Guidelines amendment "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," language identical to that appearing in section 3582(c)(1)(A) with respect to a court's consideration of a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) ("[I]f it finds . . . that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ."). *Dillon* presented the question whether *Booker*, which rendered the Guidelines advisory to remedy Sixth Amendment problems associated with a mandatory sentencing regime, requires treating Guidelines section 1B1.10(b) as nonbinding.[9] The Court concluded that *Booker* does not require that result. *See Dillon*, 560 U.S. at 824–28; *see also supra* n.7.

The Court confirmed that section 1B1.10 is binding as to 18 U.S.C. § 3582(c)(2) motions, particularly section 1B1.10's directive that a permissible sentence reduction is limited to the bottom of the revised Guideline range. *See Dillon*, 560 U.S. at 826–28. *Dillon* underscored that a sentence reduction under section 3582(c)(2) is not a resentencing proceeding. Instead, it "represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines," without any possibility of an increase in a prisoner's sentence. *Id.*

---

[9] Section 1B1.10(b) is part of the Commission's policy statement governing section 3582(c)(2) proceedings. *See* U.S.S.G. § 1B1.10(b).

at 828. The Court also highlighted the opening passage of 18 U.S.C. § 3582(c), which states that courts "may not modify a term of imprisonment once it has been imposed except that," together with the language of section 3582(c)(2) vesting courts with the power to "reduce" a sentence, not increase it. *Id.* at 825. For this and additional reasons, including that Congress explicitly gave the Sentencing Commission a significant role in determining eligibility, *Dillon* held that, unlike sentencing proceedings, the *Booker* rule is inapplicable to a section 3582(c)(2) proceeding and the Commission's relevant policy statement is controlling. *Id.* at 828.

The considerations identified by the Supreme Court in *Dillon* apply equally here. A motion for compassionate release under section 3582(c)(1)(A) is also premised on an act of congressional lenity. Section 3582(c)(1)(A) also falls under the same language of section 3582(c) strictly limiting courts' authority to modify a prisoner's sentence to the specific circumstances set forth in the statute. Like section 3582(c)(2), section 3582(c)(1)(A) only applies to a limited class of prisoners and does not warrant a full resentencing procedure. And, as with section 3582(c)(2), a sentence reduction under section 3582(c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission."

For all of these reasons, the Court will adhere to the controlling text of section 3582, together with Supreme Court and circuit precedent, confirming that any proposed sentence reduction under section 3582(c)(1)(A) must be consistent with applicable policy statements issued by the Sentencing Commission.

**C. Dodd's Motion Must Be Dismissed for Lack of Jurisdiction.**

Because Dodd's motion for compassionate release fails to meet the requirements of section 3582(c)(1)(A), it must be dismissed for lack of jurisdiction. It is well-settled in the Fifth Circuit that 18 U.S.C. § 3582 sets out the limited instances in which a district court has jurisdiction to modify a term of imprisonment. *See, e.g.*, *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam) (citing *United States v. Bridges*, 116 F.3d 1110, 1112 (5th Cir. 1997)) ("The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582."); *United States v. Marion*, 79 F. App'x 46, 2003 WL 22423180 at *1 (5th Cir. 2003) (citing *United States v. Early*, 27 F.3d 140, 142 (5th Cir. 1994)) (stating that "[s]ection 3582(c) limits sentence modification only to certain narrow circumstances, none of which are applicable in Marion's case," and dismissing the motion because it was "unauthorized and without a jurisdictional basis"). In a line of cases over two decades, circuit case law has repeatedly reaffirmed that section 3582 provides a limited grant of jurisdiction for a district court to modify a term of imprisonment. *See, e.g.*, *United States v. Rene*, 785 F. App'x 240, 240–41 (5th Cir. 2019) (per curiam); *Bridges*, 116 F.3d at 1112. Because these cases speak in terms of section 3582 as a whole, it follows that section 3582(c)(1)(A), and the limitations within, circumscribe the Court's jurisdiction.

The Court recognizes that, in a series of recent opinions, the Supreme Court has cautioned against imprecise use of the "jurisdictional" label, which can elide "the

'critical difference[s]' between true jurisdictional conditions and nonjurisdictional limitations on causes of action." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) (citations omitted) (alterations in original). To reinforce these critical differences, the Supreme Court has encouraged courts to use the "jurisdictional" label "not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 454–55, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004); *see also id.* at 455 ("Jurisdiction" refers to "a court's adjudicatory authority"). Claims-processing rules, in contrast, "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011). Based upon this line of Supreme Court authority, some courts have determined that section 3582 is a nonjurisdictional, mandatory claims-processing rule. *See, e.g.*, *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2–*3 (6th Cir. June 2, 2020); *United States v. Taylor*, 778 F.3d 667, 670–71 (7th Cir. 2015); *see also United States v. Calton*, 900 F.3d 706, 711 (5th Cir. 2018) (noting that the *Taylor* court concluded that section 3582 "is not part of a jurisdictional portion of the criminal code," and that section 3582(c) is not "phrased in jurisdictional terms").

It does not appear, however, that the Supreme Court's recent authority undermines the Fifth Circuit's understanding of section 3582's exceptions to the finality rule as jurisdictional conditions rather than claims-processing rules. The

Supreme Court has made clear that, to determine whether a statutory prescription is a jurisdictional limitation on a court's adjudicatory authority, courts must "look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.'" *Henderson*, 562 U.S. at 436. That indication, however, does not turn on Congress's use of "magic words." *Id.* Instead, as the Supreme Court has explained, Congress's intent must be determined through traditional tools of statutory construction by examining the "text, context, and relevant historical treatment" of the limitation at issue, *Reed Elsevier*, 559 U.S. at 166 (citation omitted), and "what they reveal about the purposes [the limitation] is designed to serve," *Dolan v. United States*, 560 U.S. 605, 610, 130 S.Ct. 2533, 177 L.Ed.2d 108 (2010).

Both the text and context of section 3582 demonstrate that its requirements are not simply rules that "seek to promote the orderly process of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 562 U.S. at 435. Instead, section 3582 is a "prescription[] delineating the classes of cases (subject-matter jurisdiction) . . . falling within a court's adjudicatory authority." *Kontrick*, 540 U.S. at 455. In this regard, "a basic principle of judicial process" is that, "once a final [criminal] judgment is issued and the court of appeals considers a case, a district court has *no power* to act on it further." *Eberhart v. United States*, 546 U.S. 12, 17, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam) (emphasis added). Under this "rule of finality[,]" "[f]ederal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed.'" *Freeman v. United States*, 564 U.S. 522, 526, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) (citing 18

U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). This limitation on federal courts' power is confirmed in the text of section 3582. *See* 18 U.S.C. § 3582(c) (stating that, subject to certain exceptions, a court "may not modify a term of imprisonment once it has been imposed").

Notably, the circumstances here are quite different than the context of the civil causes of action at issue in a number of the Supreme Court's recent cases addressing the proper scope of the term "jurisdiction." For example, in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), the Court considered supposedly jurisdictional limitations on a Title VII action. In *Arbaugh*, and similar civil cases, the Court has cited 28 U.S.C. § 1331 as the background jurisdictional rule, and noted that through section 1331 "Congress has broadly authorized the federal courts to exercise subject-matter jurisdiction over 'all *civil actions* arising under the Constitution, laws, or treaties of the United States.'" *Id.* at 505 (quoting 28 U.S.C. § 1331) (emphasis added). Of course, in the *criminal* context here, the jurisdictional landscape is precisely the opposite: under the finality rule, federal courts generally have no adjudicatory authority to modify a term of imprisonment once it has been imposed. *Eberhart*, 546 U.S. at 17.

It is fair to presume that when a court generally is "forbidden" to consider a modification of a term of imprisonment, it is without jurisdiction to undertake such a modification. However, the rule of finality "is subject to a few narrow exceptions." *Freeman*, 564 U.S. at 526. Section 3582 provides such exceptions, including an exception allowing the Director of the BOP, or a defendant who has fully exhausted

all administrative rights, to move for a modification of the defendant's imprisonment term based on the existence of "extraordinary and compelling reasons" warranting a reduction of the defendant's sentence. *See* 18 U.S.C. § 3582(c)(1)(A)(i).[10] A defendant must conform both to the procedural and substantive requirements of section 3582 for a court to have jurisdiction. If the text of an applicable exception is met, section 3582 provides that the case falls within the district court's adjudicatory authority to modify the defendant's term of imprisonment. If the text of an applicable exception is not met, there is no jurisdictional basis for the court to modify the term of imprisonment given the longstanding, strict application of the finality rule.[11]

Thus, the exceptions set forth in the text of section 3582 serve to create jurisdiction to modify a defendant's term of imprisonment where no jurisdiction would otherwise exist under the finality rule.[12] It is, therefore, unsurprising that a

---

[10] Beyond section 3582, there are additional, limited exceptions to the finality rule. For example, Federal Rule of Criminal Procedure 35(a) authorizes a district court to "correct a sentence that resulted from arithmetical, technical, or other clear error," and Rule 35(b) authorizes a district court to "reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person."

[11] *See United States v. Smith*, 438 F.3d 796, 799 (7th Cir. 2006) (Easterbrook, J.), *overruled by Taylor*, 778 F.3d at 671 (7th Cir. 2015) (explaining that, "[b]ecause § 3582(c) limits the substantive authority of the district court, it is a real 'jurisdictional' rule, rather than a case-processing requirement").

[12] The Supreme Court's decision in *Gonzalez v. Thaler*, 565 U.S. 134, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012), is analogous and instructive. In the context of a habeas petitioner's request for postconviction relief, the Court construed 28 U.S.C. § 2253, which "governs appeals in habeas corpus proceedings." *Id.* at 140. The Court held that section 2253(c)(1) included the following "jurisdictional" language: "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals[.]" *Id.* at 142 (internal quotation marks omitted). Although the word "jurisdiction" does not appear in the statute, the Court nonetheless affirmed that section 2253(c)(1)'s certificate-of-appealability requirement is jurisdictional. *Id.* Similarly here, section 3582's language that a court "may

majority of circuits, including the Fifth Circuit, have treated section 3582's requirements as jurisdictional. *See United States v. Denson*, 798 F. App'x 605, 605–06 (11th Cir. 2020) (per curiam) (citing *United States v. Phillips*, 597 F.3d 1190, 1194–97 (11th Cir. 2010)); *Saldana*, 807 F. App'x at 819 (citing *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014)); *United States v. Carrillo*, 720 F. App'x 815, 815 (8th Cir. 2018) (per curiam) (citing *United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993)); *United States v. Spears*, 824 F.3d 908, 909 (9th Cir. 2016); *United States v. Freeman*, 659 F. App'x 94, 98 (3d Cir. 2016) (citing *United States v. Doe*, 564 F.3d 305, 309 (3d Cir. 2009)); *Garcia*, 606 F.3d at 212 n.5. On the other hand, the Court is aware of only two circuits that have reached the opposite conclusion. *See Alam*, 2020 WL 2845694, at *2–*3; *Taylor*, 778 F.3d at 669–71.[13]

\* \* \*

To determine this case, it is enough for the Court that the Fifth Circuit's binding precedent continues to treat section 3582 as a demarcation of jurisdiction. Because Dodd has failed to meet the controlling requirements for compassionate

---

not modify a term of imprisonment once it has been imposed," except as provided under subsections 3582(c)(1)–(2), speaks in jurisdictional terms.

[13] Cases addressing successive motions pursuant to section 3582(c)(2) are distinguishable. Section 3582(c)(2) does not speak to a district court's authority to grant such motions. From this silence, some circuits have held that the bar is nonjurisdictional because there is no clear statement from Congress that it is in fact jurisdictional. *See, e.g.*, *United States v. Weatherspoon*, 696 F.3d 416, 421–22 (3d Cir. 2012). Others have held that courts simply have jurisdiction over such motions. *See, e.g.*, *Calton*, 900 F.3d at 710–11 (collecting cases). In any event, the absence of explicit language in the statute renders these cases inapposite.

release set forth in section 3582(c)(1)(A), her motion for compassionate release must be dismissed for lack of jurisdiction.[14]

### III. Conclusion

It is therefore **ORDERED** that Deborah Ann Dodd's Emergency Motion for Compassionate Release, (Dkt. #145), is **DISMISSED for lack of jurisdiction**.

**So ORDERED and SIGNED this 10th day of July, 2020.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

---

[14] Dodd also requests, in the alternative, that the Court order her release to home confinement (though Dodd does not specify a legal basis for such relief). Contrary to Dodd's assertion, the BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b)*; see also United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."); *Zheng Yi Xiao v. La Tuna Fed. Corr. Inst.*, No. 3:19-CV-97, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.") (citing *Moore v. U.S. Atty. Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971) (per curiam)).